UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00030-HBB

JOHNNY D.[1]                                                                                                  PLAINTIFF

V.

KILOLO KIJAKAZI, ACTING COMMISSIONER[2]
SOCIAL SECURITY ADMINISTRATION                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Johnny D. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 17) and Defendant (DN 23) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED.**

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 15). By Order entered August 6, 2021 (DN 16), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1   Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

2   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on October 23, 2018 (Tr. 15, 226-28, 229-32). Plaintiff alleges to have become disabled on October 5, 2018, as a result of a heart attack with one stent, coronary artery disease, ventricular tachycardia, pain on the left side of the body, low back pain, high blood pressure and cholesterol, shortness of breath, fatigue, anxiety and depression, neck pain, and a cracked breastbone (Tr. 15, 63, 79, 99, 115, 282). The claims were initially denied on July 30,[3] 2019, and the claims were again denied upon reconsideration on November 1, 2019 (Tr. 15, 77, 93-96, 113, 129-32). Thereafter, on December 6, 2019, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 15, 174, 177).

Administrative Law Judge Lisa R. Hall ("ALJ") conducted a telephone hearing[4] on July 16, 2020 (Tr. 15, 31-33). On the line during the hearing was Plaintiff and his attorney Charles Burchett (Id.). During the hearing, Elizabeth Schultz testified as a vocational expert (Id.).

On August 25, 2020, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 15-25). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 5, 2018, the alleged onset date (Tr. 17). At the second step, the ALJ determined Plaintiff has three severe impairments: coronary artery disease, degenerative disc disease, and osteoarthritis (Id.). The ALJ opined that Plaintiff's anxiety did not cause more than minimal limitation and was, therefore, nonsevere (Tr. 18). At the third

---

3   The ALJ's opinion listed the date of the initial denial as July 31, 2019 (Tr. 15). The Disability Determination and Transmittal documents, as well as the date accompanying the signature of the Disability Adjudicator/Examiner, list the date as July 30, 2019 (Tr. 77, 93-96). Thus, the Court will use July 30 date.

4   The ALJ notes that a telephone hearing was utilized "due to the extraordinary circumstance" which was Covid-19 (Tr. 15, 33). Plaintiff agreed to a telephone hearing (Id.).

step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 19).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations: Plaintiff could occasionally crawl or climb ladders; should avoid concentrated exposure to temperature extreme and pulmonary irritants; and should avoid concentrated exposure to hazards, such as unprotected heights or moving/dangerous machinery (Id.). The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 23).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since October 5, 2018, the alleged onset date, through the date of the decision, August 25, 2020 (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 223-25). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when

a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993).

### The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?
2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 5: RFC and Lifting Restriction

1. Arguments of the Parties

In his Fact and Law Summary, Plaintiff asserts two interconnected claims of error with the ALJ's RFC finding (DN 17, pp. 2-7). First, Plaintiff takes issue with the ALJ's rejection of Dr. Knoll's ten-pound lifting limitation and how "[t]here are factual reasons why the ALJ's statements does not support the rejection" (Id. at p. 5). Moreover, "[t]here was no statement in the rejection of Dr. Knoll's opinion as to what extent it was found to be consistent with the other medical evidence of record" (Id. at p. 6). Plaintiff also alleges "the ALJ overlooked Dr. Gaba's limitation of no lifting" when incorrectly stating there were no lifting limitation opinions from a cardiologist (Id. at p. 5) (citing Tr. 394). The other aspect of the argument relates to the ALJ rejecting a lifting restriction consistent with the opinions of Drs. Knoll and Gaba (Id. at pp. 2, 5-7). Had the ALJ

accepted the opinions of Drs. Knoll and Gaba, then a lifting limitation would be necessary. Finally, included in this argument, Plaintiff presents a brief argument that the ALJ "inappropriately quoted" Plaintiff's testimony about his ability to lift 20-30 pounds with both hands, though it would cause pain, "to discredit a medical opinion that expressed restrictions for cardiac purposes" (Id. at pp. 5-6).

Defendant posits that the ALJ properly "considered Plaintiff's symptoms, treatment notes, clinical findings and fests, and the medical opinions" (DN 23, p. 4) (citing Tr. 19-23). Moreover, the ALJ found prior administrative medical findings to be persuasive, as they were consistent with and supported by the record evidence (Id.) (citing Tr. 22). In regard to Dr. Knoll, Defendant contends "the ALJ evaluated the medical opinion evidence in accordance with the regulations and fully explained that he found Dr. Knoll's opinion only partially persuasive because it was neither supported by his own consultative examination findings nor consistent with other evidence in the record that supported the ability to perform light work" (Id. at p. 5). Defendant later recounts Dr. Knoll's observations of Plaintiff to support the ALJ's finding (Id. at p. 7) (citing Tr. 22, 411-14). As for Dr. Gaba, Defendant asserts that Dr. Gaba "restricted lifting over 10 pounds for only 6-8 weeks following implantation of the defibrillator in August 2019" (Id. at p. 9) (citing Tr. 546). Thus, Defendant contends the ALJ's medical opinion evaluation and RFC's lack of lifting restrictions is supported by substantial evidence (Id. at pp. 9-10).

2. Discussion

The RFC finding is an administrative law judge's ultimate determination of what a claimant can still do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c); Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013) (the Commissioner is ultimately responsible for assessing a claimant's RFC). An administrative law

judge makes this finding based on a consideration of medical opinions and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

As Plaintiff filed his applications after March 27, 2017 (Tr. 15, 226-28, 229-32), the new regulations for evaluating medical opinions are applicable. *See* 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[5] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulations administrative law

---

5 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Turning to the present case, the ALJ notes that Plaintiff "attended a consultative medical exam in April 2019 with Paul Knoll, M.D." (Tr. 22). The ALJ then went on to thoroughly discuss each of the findings in Dr. Knoll's examination, including, in the pertinent parts, 5/5 bilateral upper and lower extremity strength and had no evidence of chronic venous obstruction or arterial insufficientcy, no range of motion deficits, no limitation with handling or gross/fine finger movements, and a recommended limitation of no strenuous activity, no bending, and no lifting more than 10 pounds (Id.) (citing Tr. 410-16). The ALJ found the opinion to be "partially persuasive" but explicitly detailed why the lifting limitation was not supported: "[T]he record does not appear to contain a limitation imposed by [Plaintiff]'s cardiologist regarding his ability to lift. The unremarkable exam does not support a limitation regarding lifting less than 10 pounds, and [Plaintiff] testified that he could lift around 20-30 pounds if he uses both hands" (Id.).

Looking to April 20, 2019, examination, Dr. Knoll recites a history where Plaintiff was "[s]een by cardiologist who limited patient to no strenuous activity, no bending over that would cause rush of blood to the head, and heavy lifting" (Tr. 410). Like the ALJ noted, there was 5/5 bilateral grip strength and bilateral upper and lower extremity strength (Tr. 411). Moreover, Dr. Knoll mentions "[r]ange of motion without limitation" (Id.). At the conclusion of the report, Dr. Knoll's recommendation reads, "Recommend continued limitation per cardiologist. NO strenuous activity, no bending, no heavy lifting > 10 lbs. Further limitation per cardiologist" (Tr. 412). These limitations appear to not be based on Dr. Knoll's examination or opinion but are merely a recitation of the limitation opined elsewhere.

8

As for Dr. Gaba's opinion, it was contained in Plaintiff's "Discharge Summary" dated September 8, 2018, under the category "Patient/Caregiver Discharge Instructions" and plainly stated, "Activity: No lifting, other (no driving for one week)" with a follow-up plan with Dr. Kal Sahetya in one week and with Dr. Gaba in four weeks (Tr. 394). This discharge followed Plaintiff's admission to Medical Center Bowling Green three days prior for a ST elevation myocardial infarction (STEMI) which required left cardiac catheterization and percutaneous intervention (Tr. 386-88). Apart from the notation above, nothing in the admission or discharge documents discussed lifting restrictions or limitations. Almost a year later, on August 31, 2019, Plaintiff was again at Medical Center Bowling Green where Dr. Gaba opined discharge instructions after insertion of an Implantable Cardioverter Defibrillator which included a limitation of "[n]o heavy lifting (more than 10 pounds) for 6 to 8 weeks" (Tr. 546).

From Plaintiff's limitations by Dr. Gaba in September 2018 to the examination by Dr. Knoll in April 2019, Plaintiff visited Sahetya Medical Group and Medical Center Bowling Green several times, but none of the documentation discusses any limitations for lifting (Tr. 417-46). Even in the months following Dr. Knoll's examination, there still are no notations or discussions in the medical evidence to recount any lifting limitations (Tr. 506-35, 573-729).

During the administrative hearing, when discussing Plaintiff's previous work, Plaintiff recounted working at the VA hospital in 2018 (Tr. 42-43). This occurred before Plaintiff's admission to Medical Center Bowling Green for the ST elevation myocardial infarction (STEMI) (Id.). During that job, Plaintiff "had to pick up [high pressure washer] motors up, move those around. And they'd weight anywhere from 75 to 100 pounds" (Id.). Later in the hearing, Plaintiff was asked the weight he is able to lift with both arms, to which he replied, "I believe I could pick up 20, 30 pounds, but it's gonna hurt, you know" (Tr. 52). When asked about each

9

arm individually, Plaintiff explained, "With my left arm, I can lift no more than 25, 30 pounds; it's gonna hurt me. And my doctor says not to lift nowhere near 20 pounds, and that's gonna be the rest of my life with my right shoulder" (Id.). The ALJ, while not including all the information from these statements, noted Plaintiff's testimony about being able to lift approximately 20 to 30 pounds with both hands, though the ALJ did not include Plaintiff's mention of pain (Tr. 22).

To further substantiate the ALJ's point, the ALJ found the opinion of Dr. Bradley Stephan—the State agency medical consultant at the reconsideration level—to be persuasive (Tr. 22). In Dr. Stephan's RFC findings, he opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds (Tr. 109, 125). This is consistent with the lifting criteria contained within 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Accordingly, the ALJ considered all the relevant documentation in the record and appropriately apportioned persuasiveness to the opinions, consistent with the applicable regulations. Moreover, while Dr. Gaba did issue two documents with contained limited mentions restricting lifting following discharge (Tr. 394, 546), the ALJ's finding that "the record does not appear to contain a limitation imposed by the claimant's cardiologist regarding his ability to lift" is still supported by substantial evidence. These restrictions were related to medical care immediately prior to the instruction and do not appear in any later documentation. Thus, the Court is unpersuaded that Dr. Gaba's notations were an ongoing restriction against lifting which the ALJ "overlooked". Therefore, based on the all the information above, the ALJ's determination to find Dr. Knoll's opinion not persuasive when discussing the lifting limitation is supported by substantial evidence and comports with applicable law. As a result, the ALJ's findings to not include a lifting limitation in the RFC analysis is also supported by substantial evidence and comports with applicable law. Plaintiff is awarded no relief under this challenge.

10

Findings No. 10 & 11: Jobs in National Economy & "Not Disabled"

At the conclusion of Plaintiff's Fact and Law Summary, Plaintiff argues that Findings 10—there are a significant number of jobs in the national economy that Plaintiff can perform—and 11—final finding of "not [] under a disability"—are unsupported by substantial evidence (DN 17, p. 8). This argument stems from the assertions of error above (Id.). No further argument, record citations, or case citations are presented. It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).

Even then, with the Court considering and rejecting Plaintiff's arguments about the ALJ's RFC analysis, the condition-precedent to support Plaintiff's claims remains unfulfilled. As the Court found the ALJ's RFC determination to be supported by substantial evidence, there is no basis of error for the later objections to Findings 10 and 11.

Therefore, Plaintiff's claims to Findings 10 and 11 are deemed waived, and he is awarded no relief under these challenges.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this

Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  Id.  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.  Therefore, Plaintiff is not entitled to relief with regard to his challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

H. Brent Brennenstuhl
United States Magistrate Judge

July 28, 2022

Copies:     Counsel of Record